Douglas H. Morseburg (SBN 126205)
dmorseburg@leechtishman.com
Esther J. Choe (SBN 321667)
echoe@leechtishman.com
LEECH TISHMAN FUSCALDO & LAMPL
200 South Los Robles Avenue, Suite 300
Pasadena, California 91101
Telephone: (626) 796-4000
Facsimile:  (626) 795-6321

Attorneys for Defendant and Counterclaimant
Golden Lyon Investment Co.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WM INTERNATIONAL, INC., a New York corporation; GUANGDONG CEREALS & OILS JINSHUN TRADING CORPORATION, LTD., a People's Republic of China corporation; and SHAOGUAN RISEN TRADING CORPORATION LTD., a People's Republic of China corporation, | Case No. 2:20-cv-00995-CJC-JPR **FIRST AMENDED COUNTERCLAIM OF GOLDEN LYON INVESTMENT CO.** **AND** **REQUEST FOR JURY TRIAL** |
| Plaintiffs, | |
| vs. | |
| GOLDEN LYON INVESTMENT CO. dba W.Y. INTERNATIONAL, INC., a California corporation; and Does 1 through 10, inclusive, | |
| Defendants. | |

GOLDEN LYON INVESTMENT CO., a California corporation doing business

-1-

**FIRST AMENDED COUNTERCLAIM**

as W.Y. International Inc.,

Counterclaimant,

vs.

WM INTERNATIONAL, INC., a New York corporation; GUANGDONG CEREALS & OILS JINSHUN TRADING CORPORATION, LTD., a People's Republic of China corporation; SHAOGUAN RISEN TRADING CORPORATION LTD., a People's Republic of China corporation; and ROES 1 through 10, inclusive,

Counterclaim Defendants.

For its First Amended Counterclaim against Plaintiffs WM International, Inc., Guangdong Cereals & Oils Jinshun Trading Corporation, Ltd. and Shaoguan Risen Trading Corporation Ltd. (collectively "Plaintiffs"), Defendant Golden Lyon Investment Co., through its attorneys, Leech Tishman Fuscaldo & Lampl, alleges as follows:

## NATURE OF THE COUNTERCLAIM

1.     This counterclaim seeks cancellation of four federally-registered trademarks pursuant to 15 U.S.C. §§ 1064 and 1119 and a declaration regarding the invalidity of the alleged trade dress rights of Plaintiffs in certain product packaging.

## THE PARTIES

2.     Defendant Golden Lyon Investment Co. ("Counterclaimant" or "Golden Lyon") is a corporation organized under the laws of the State of California that does

-2-

business as W.Y. International, Inc.  Golden Lyon has its principal place of business at 2000 S. Garfield Ave., Los Angeles, California.

3.　　On information and belief, Plaintiff WM International, Inc. ("WMI") is a corporation organized and existing under the laws of the State of New York, with its principal place of business in Brooklyn, New York.

4.　　On information and belief, Plaintiff Guangdong Cereals & Oils Jinshun Trading Corporation Ltd. ("GJT") is a corporation organized and existing under the laws of People's Republic of China, with its principal place of business in Guangzhou, China.

5.　　On information and belief, Plaintiff Shaoguan Risen Trading Corporation Ltd. ("SRT") is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business in Shaoguan, Guangdong, China.

6.　　The true names and capacities of the Counterclaim Defendants named in this counterclaim as Roes 1 through 10, whether individual, corporate, associate, or otherwise, are unknown to Golden Lyon, who therefore sues said Counterclaim Defendants by said fictitious names.  Golden Lyon is informed and it believes, and on that basis alleges, that each of the Counterclaim Defendants designated in this counterclaim as a Roe is legally responsible for the events and happenings alleged below and proximately caused injury and damages to Golden Lyon, as alleged.  Golden Lyon will seek leave to amend this counterclaim when the true names and capacities of said Roe Counterclaim Defendants have been ascertained.  From this point forward, WMI, GJT, SRT and Roes 1 through 10 are collectively referred to as "Counterclaim Defendants."

7.　　Plaintiff is informed and believes, and on that basis alleges, that each of the Counterclaim Defendants participated in and is in some manner responsible for the acts described in this counterclaim and any damages resulting therefrom.

8.　　Plaintiff is further informed and believes, and on that basis alleges, that Plaintiffs and Roes 1-10 have acted in concert and participation with each other concerning the claims in this Complaint and/or that Plaintiffs and Roes 1-10 were

-3-

**FIRST AMENDED COUNTERCLAIM**

empowered to act as the agents, servants and/or employees of each other, and that all of the acts alleged to have been done by each of them were authorized, approved and/or ratified by each of the others.

## JURISDICTION AND VENUE

9.    This court has jurisdiction over this counterclaim pursuant to 15 U.S.C. §§ 1119 and 1121 and 28 U.S.C. §§ 1331, 1338 and 2201.

10.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b) in that substantial events giving rise to this counterclaim occurred in this district and the Plaintiffs commenced the instant action here.

## FACTS COMMON TO ALL COUNTS
### The Within Action

11.    On or about January 30, 2020, Plaintiffs commenced the within action against Golden Lyon.  Among other things, Plaintiffs contend: (i) that they own rights in four different trademarks, (ii) that those four trademarks are registered in the U.S. Patent and Trademark Office ("PTO"), (iii) that they also own trade dress rights in two separate packaging designs for rice vermicelli products (the "Chao Ching Packaging" and the "Kong Moon Packaging"), and (iv) that Golden Lyon is infringing the Plaintiffs' rights in the asserted trademarks and trade dress.

12.    Golden Lyon contends that it is not infringing any of Plaintiffs' alleged trademark rights in any of the marks that are the subject of the Plaintiffs' asserted registrations.  It also contends that the asserted registrations should be canceled because, in securing each registration, Plaintiffs GJT and SRT committed fraud upon the PTO.

13.    Golden Lyon further contends that it is not infringing any of Plaintiffs' alleged trade dress rights in the Chao Ching Packaging and/or the Kong Moon Packaging and that Plaintiffs have no valid trade dress rights in either packaging design.

-4-

**FIRST AMENDED COUNTERCLAIM**

## COUNT I

### (Against GJT for Cancellation of U.S. Registration No. 1,564,897 - 15 U.S.C. §§ 1064 and 1119)

14.    Golden Lyon incorporates paragraphs 1 through 13, above, as though fully set forth in this paragraph.

15.    On or about November 7, 1989, the PTO issued U.S. Registration no. 1,564,897 (the "'897 Registration") to Guangdong Cereals & Oils Import & Export ("Import/Export") for that certain Sailing Boat Brand Plus Design mark (the "Sailing Boat Brand Mark") for use in connection with "rice, rice stick, and rice vermicelli" in International Class ("IC") 30.  The Sailing Boat Brand Mark is shown immediately below:



16.    According to the records of the PTO, which are publicly available, Import/Export purported to assign the '897 Registration to GJT on or about September 30, 2002.  The assignment was recorded in the PTO on or about October 28, 2002.  The PTO's records further reflect that GJT renewed the '897 Registration on October 27, 2009 and again on November 6, 2019.

17.    In connection with the renewal of the '897 Registration on October 27, 2009, GJT submitted a declaration to the PTO.  The declaration, a true and correct copy of which is attached as Exhibit A, was electronically signed by GJT's counsel, James M. Slattery.  The declaration stated, among other things, that the Sailing Boat Brand Mark was "in use in commerce in connection with **all** the goods . . . listed in the existing ['897] registration . . ." (emphasis in original).

**FIRST AMENDED COUNTERCLAIM**

18.     In connection with the renewal of the '897 Registration on November 6, 2019, GJT submitted a declaration to the PTO.  The declaration, a true and correct copy of which is attached as Exhibit B, was electronically signed by GJT's counsel, Julianne Abelman.  The declaration stated, among other things, that the Sailing Boat Brand Mark was in use in commerce in connection with all the goods listed in the '897 Registration, that Ms. Abelman had conducted an inquiry into the facts stated in the declaration, and that, based upon that inquiry, there was evidentiary support for the statement that the Sailing Boat Brand Mark was in use in commerce in connection with all the goods for which the Sailing Boat Brand Mark was registered.

19.     Golden Lyon formerly had a business relationship with GJT that spanned many years.  As a consequence of that relationship, Golden Lyon is familiar with the products GJT has offered under the Sailing Boat Brand Mark and it is aware that GJT does not use, and it has never used, the Sailing Boat Brand Mark in commerce in connection with rice.  Thus, the statements in the Slattery and Abelman declarations that the Sailing Boat Brand Mark was in use in commerce in connection with all the goods listed in the '897 Registration on October 27, 2009 and on November 6, 2019 were false on their face at the time they were made.

20.     On information and belief, prior to time Mr. Slattery electronically signed his declaration on October 27, 2009, he contacted a manager or an officer of GJT to confirm that the Sailing Boat Brand Mark was, in fact, in use in connection with all the goods listed in the '897 Registration.  That individual, whose identity is currently unknown to Golden Lyon, shall be referred to from this point forward as "Individual A".

21.     When contacted by Mr. Slattery, Individual A falsely told Mr. Slattery that the mark was in use in connection with all the goods listed in the '897 Registration.  At the time Individual A told Mr. Slattery that the Sailing Boat Brand Mark was in use in connection with all the goods for which it was registered, Individual A knew that the statement was false.  Moreover, Individual A made the statement in bad faith knowing that Mr. Slattery would repeat the statement to the PTO and intending to induce the PTO

**FIRST AMENDED COUNTERCLAIM**

to rely on it and to renew the '897 Registration.  The statement was material and the PTO, in fact, relied upon the statement by renewing the '897 Registration.  Had the PTO been informed of the true facts, i.e., that the Sailing Boat Brand mark was not in use in connection with all the goods for which it was registered, the PTO would not have renewed the '897 Registration.

22.    On information and belief, prior to time Ms. Abelman electronically signed her declaration on November 6, 2019, she contacted a manager or an officer of GJT to confirm that the Sailing Boat Brand Mark was, in fact, in use in connection with all the goods listed in the '897 Registration.  That individual, whose identity is currently unknown to Golden Lyon, shall be referred to from this point forward as "Individual B".

23.    When contacted by Ms. Abelman, Individual B falsely told Ms. Abelman that the mark was in use in connection with all the goods listed in the '897 Registration. At the time Individual B told Ms. Abelman that the Sailing Boat Brand Mark was in use in connection with all the goods for which it was registered, Individual B knew that the statement was false.  Moreover, Individual B made the statement in bad faith knowing that Ms. Abelman would repeat the statement to the PTO and intending to induce the PTO to rely on it and to renew the '897 Registration.  The statement was material and the PTO, in fact, relied upon the statement by renewing the '897 Registration.  Had the PTO been informed of the true facts, i.e., that the Sailing Boat Brand mark was not in use in connection with all the goods for which it was registered, the PTO would not have renewed the '897 Registration.

24.    The '897 Registration should be canceled pursuant to 15 U.S.C. §§ 1064 and 1119 on the grounds that the registration was obtained as a consequence of a fraud practiced upon the trademark office by GJT in that, at the time GJT renewed the '897 Registration on October 27, 2009, it caused its attorneys to falsely declare the Sailing Boat Brand Mark was in use in commerce in connection with all the goods listed in the '897 Registration, including rice.

25.    As a separate ground, the '897 Registration should be canceled pursuant to

**FIRST AMENDED COUNTERCLAIM**

15 U.S.C. §§ 1064 and 1119 on the grounds that the registration was obtained as a consequence of a fraud practiced upon the trademark office by GJT in that, at the time GJT renewed the '897 Registration on November 6, 2019, it caused its attorneys to falsely declare the Sailing Boat Brand Mark was in use in commerce in connection with all the goods listed in the '897 Registration, including rice.

26.     Golden Lyon has standing to seek cancellation of the '897 Registration because a counterclaimant's standing to cancel a pleaded registration is inherent. Further, in response to GJT's claim, Golden Lyon has voluntarily ceased sales and promotional efforts of certain of its products.  Finally, as a result of GJT's claims and the fraudulently procured '897 Registration, Golden Lyon is damaged by having to expend considerable resources and time, attorneys' fees and costs defending against GJT's allegations in this Court.

## COUNT II

## (Against SRT for Cancellation of U.S. Registration No. 1,568,672 - 15 U.S.C. §§ 1064 and 1119)

27.     Golden Lyon incorporates paragraphs 1 through 13 and 20, above, as though fully set forth in this paragraph.

28.     On or about November 28, 1989, the PTO issued U.S. Registration no. 1,568,672 (the "'672 Registration") to China National Cereals, Oils and Foodstuffs Import and Export ("CNCOF") for that certain Double Swallow Brand Plus Design mark (the "Double Swallow Brand Mark") for use in connection with "rice, rice stick, and rice vermicelli" in IC 30.  On information and belief CNCOF subsequently changed its name to Guangdong Cereals & Oils Import & Export (i.e., Import/Export).  The Double Swallow Brand Mark is shown immediately below:

/ / /

/ / /

**FIRST AMENDED COUNTERCLAIM**



29.    According to the records of the PTO, which are publicly available, Import/Export purported to assign the '672 Registration to GJT on or about June 3, 2002.  The assignment was recorded in the PTO or about December 24, 2002.  The PTO's records further reflect that GJT renewed the '672 Registration on October 27, 2009.

30.    In connection with the renewal of the '672 Registration on October 27, 2009, GJT submitted a declaration to the PTO.  The declaration, a true and correct copy of which is attached as Exhibit C, was electronically signed by GJT's counsel, James M. Slattery.  The declaration stated, among other things, that the Double Swallow Brand Mark was "in use in commerce in connection with **all** the goods . . . listed in the existing ['672] registration . . ." (emphasis in original).

31.    According to the records of the PTO, GJT purported to assign the '672 Registration to SRT on or about July 29, 2016.  The assignment was recorded in the PTO or about November 21, 2016.  The PTO's records further reflect that SRT renewed the '672 Registration on November 20, 2019.

32.    In connection with the renewal of the '672 Registration on November 20, 2019, SRT submitted a declaration to the PTO.  The declaration, a true and correct copy of which is attached as Exhibit D, was electronically signed by SRT's counsel, Marie Anne Mastrovito.  The declaration stated, among other things, that the Double Swallow Brand Mark was in use in commerce in connection with all the goods listed in the '672 Registration, that Ms. Mastrovito had conducted an inquiry into the facts stated in the declaration, and that, based upon that inquiry, there was evidentiary support for the

**FIRST AMENDED COUNTERCLAIM**

statement that the Double Swallow Brand Mark was in use in commerce in connection with all the goods for which the Double Swallow Brand Mark was registered.

33.    Golden Lyon formerly had a business relationship with GJT that spanned many years.  As a consequence of that relationship, Golden Lyon is familiar with the products GJT has offered under the Double Swallow Brand Mark and it is aware that GJT never used the Sailing Boat Brand Mark in commerce in connection with rice. Thus, the statement in the Slattery declaration that the Double Swallow Brand Mark was in use in commerce in connection with all the goods listed in the '672 Registration on October 27, 2009 was false on its face at the time it was made.

34.    In addition, Golden Lyon has been an importer and wholesaler of Chinese food products for many years and it knows that market intimately.  Based upon its knowledge, Golden Lyon is familiar with the products SRT has offered under the Double Swallow Brand Mark since 2016 and it is informed and it believes that SRT does not use, and that it has never used, the Double Swallow Brand Mark in commerce in connection with rice.  Thus, the statement in the Mastrovito declaration that the Double Swallow Brand Mark was in use in commerce in connection with all the goods listed in the '672 Registration on November 20, 2019 was false on its face at the time it was made.

35.    On information and belief, prior to time Mr. Slattery electronically signed his declaration on October 27, 2009, he confirmed with Individual A that the Double Swallow Brand Mark was, in fact, in use in connection with all the goods listed in the '672 Registration.

36.    When contacted by Mr. Slattery, Individual A falsely told Mr. Slattery that the mark was in use in connection with all the goods listed in the '672 Registration.  At the time Individual A told Mr. Slattery that the Double Swallow Brand Mark was in use in connection with all the goods for which it was registered, Individual A knew that the statement was false.  Moreover, Individual A made the statement in bad faith knowing that Mr. Slattery would repeat the statement to the PTO and intending to induce the PTO

**FIRST AMENDED COUNTERCLAIM**

to rely on it and to renew the '672 Registration.  The statement was material and the PTO, in fact, relied upon the statement by renewing the '672 Registration.  Had the PTO been informed of the true facts, i.e., that the Double Swallow Brand Mark was not in use in connection with all the goods for which it was registered, the PTO would not have renewed the '672 Registration.

37.    On information and belief, prior to time Ms. Mastrovito electronically signed her declaration on November 20, 2019, she contacted a manager or an officer of SRT to confirm that the Double Swallow Brand Mark was, in fact, in use in connection with all the goods listed in the '672 Registration.  That individual, whose identity is currently unknown to Golden Lyon, shall be referred to from this point forward as "Individual C".

38.    When contacted by Ms. Mastrovito, Individual C falsely told Ms. Mastrovito that the mark was in use in connection with all the goods listed in the '672 Registration.  At the time Individual C told Ms. Mastrovito that the Double Swallow Brand Mark was in use in connection with all the goods for which it was registered, Individual C knew that the statement was false.  Moreover, Individual C made the statement in bad faith knowing that Ms. Mastrovito would repeat the statement to the PTO and intending to induce the PTO to rely on it and to renew the '672 Registration. The statement was material and the PTO, in fact, relied upon the statement by renewing the '672 Registration.  Had the PTO been informed of the true facts, i.e., that the Double Swallow Brand mark was not in use in connection with all the goods for which it was registered, the PTO would not have renewed the '672 Registration.

39.    The '672 Registration should be canceled pursuant to 15 U.S.C. §§ 1064 and 1119 on the grounds that the registration was obtained as a consequence of a fraud practiced upon the trademark office by GJT in that, at the time GJT renewed the '672 Registration on October 27, 2009, it caused its attorneys to falsely declare the Double Swallow Brand Mark was in use in commerce in connection with all the goods listed in the '672 Registration, including rice.

**FIRST AMENDED COUNTERCLAIM**

40.    As a separate ground, the '672 Registration should be canceled as a consequence of a fraud practiced upon the trademark office by SRT in that, at the time SRT renewed the '672 Registration on November 20, 2019, SRT caused its attorneys to falsely declare the Double Swallow Brand Mark was in use in commerce in connection with all the goods listed in the '672 Registration, including rice.

41.    Golden Lyon has standing to seek cancellation of the '672 Registration because a counterclaimant's standing to cancel a pleaded registration is inherent. Further, in response to GJT's claim, Golden Lyon has voluntarily ceased sales and promotional efforts of certain of its products.  Finally, as a result of GJT's claims and the fraudulently procured '672 Registration, Golden Lyon is damaged by having to expend considerable resources and time, attorneys' fees and costs defending against SRT's allegations in this Court.

## COUNT III

## (Against GJT for Cancellation of U.S. Registration No. 2,156,291 -
## 15 U.S.C. §§ 1064 and 1119)

42.    Golden Lyon incorporates paragraphs 1 through 13, above, as though fully set forth in this paragraph.

43.    On or about May 12, 1998, the PTO issued U.S. Registration no. 2,156,291 (the "'291 Registration") to Import/Export for the Sailing Boat Brand Mark for use in connection with "rice, rice sticks, rice flour, glutinous rice flour, noodles, macaroni, rice vermicelli, instant noodles, buns, ravioli, pies, candy, biscuits, bread, ice cream, ice milk, and frozen yogurt, pastries, yeast, puffed cereals, ice, salt, food starch, seasonings, mustard, ketchup, relish, soy sauce, vinegar, pepper, sugar, honey, flavoring syrup, pancake syrup, spices, coffee, coffee substitutes (grain based), cocoa and tea" in IC 30. The Sailing Boat Brank Mark is shown in paragraph 15, above, but it is reproduced again below:

/ / /

**FIRST AMENDED COUNTERCLAIM**

44.     According to the records of the PTO, which are publicly available, Import/Export purported to assign the '291 Registration to GJT on or about June 3, 2002.  The assignment was recorded in the PTO or about December 24, 2002.  The PTO's records further reflect that GJT renewed the '291 Registration on May 9, 2008 and on May 14, 2018.

45.     In connection with the renewal of the '291 Registration on May 9, 2008, GJT submitted a declaration to the PTO.  The declaration, a true and correct copy of which is attached as Exhibit E, was electronically signed by GJT's counsel, James M. Slattery.  The declaration stated, among other things, that the Sailing Boat Brand Mark was "in use in commerce in connection with **all** the goods . . . listed in the existing ['291] registration . . ." (emphasis in original).  At the time, the goods listed in the '291 Registration included "rice, rice sticks, rice flour, glutinous rice flour, noodles, macaroni, rice vermicelli, instant noodles, buns, ravioli, pies, candy, biscuits, bread, ice cream, ice milk, and frozen yogurt, pastries, yeast, puffed cereals, ice, salt, food starch, seasonings, mustard, ketchup, relish, soy sauce, vinegar, pepper, sugar, honey, flavoring syrup, pancake syrup, spices, coffee, coffee substitutes (grain based), cocoa and tea".

46.     In connection with the renewal of the '291 Registration on May 14, 2018, GJT submitted a declaration to the PTO.  The declaration, a true and correct copy of which is attached as Exhibit F, was signed by GJT's president, Wu Hai Xing.  The declaration stated, among other things, that certain goods or services should be deleted from the '291 Registration, but that the Sailing Boat Brand Mark was in use in commerce in connection with: rice sticks, rice flour, glutinous rice flour, rice vermicelli, and instant noodles.

-13-

**FIRST AMENDED COUNTERCLAIM**

47.    Golden Lyon formerly had a business relationship with GJT that spanned many years.  As a consequence of that relationship, Golden Lyon is familiar with the products GJT has offered under the Sailing Boat Brand Mark and it is aware that GJT does not use, and it has never used, the Sailing Boat Brand Mark in commerce in connection with, among other things, rice, rice flour, glutinous rice flour, buns, ravioli, pies, candy, biscuits, bread, ice cream, ice milk, and frozen yogurt, pastries, yeast, puffed cereals, ice, salt, food starch, seasonings, mustard, ketchup, relish, soy sauce, vinegar, pepper, sugar, honey, flavoring syrup, pancake syrup, spices, coffee, coffee substitutes (grain based), cocoa and tea.  Thus, the statement in the Slattery declaration that the Sailing Boat Brand Mark was in use in commerce in connection with all the goods listed in the '291 Registration on May 9, 2008 was false on its face at the time it was made.

48.    On information and belief, prior to time Mr. Slattery electronically signed his declaration on May 9, 2008, he contacted a manager or an officer of GJT to confirm that the Sailing Boat Brand Mark was, in fact, in use in connection with all the goods listed in the '291 Registration.  That individual, whose identity is currently unknown to Golden Lyon, shall be referred to from this point forward as "Individual D".

49.    When contacted by Mr. Slattery, Individual D falsely told Mr. Slattery that the mark was in use in connection with all the goods listed in the '291 Registration.  At the time Individual D told Mr. Slattery that the Sailing Boat Brand Mark was in use in connection with all the goods for which it was registered, Individual D knew that the statement was false.  Moreover, Individual D made the statement in bad faith knowing that Mr. Slattery would repeat the statement to the PTO and intending to induce the PTO to rely on it and to renew the '291 Registration.  The statement was material and the PTO, in fact, relied upon the statement by renewing the '291 Registration.  Had the PTO been informed of the true facts, i.e., that the Sailing Boat Brand mark was not in use in connection with all the goods for which it was registered, the PTO would not have renewed the '291 Registration.

-14-

**FIRST AMENDED COUNTERCLAIM**

50.     On information and belief, at the time Wu Hai Xing signed her declaration on May 14, 2018 stating that Sailing Boat Brand Mark was in use in connection with rice sticks, rice flour, glutinous rice flour, rice vermicelli, and instant noodles, Ms. Wu knew that the statement was false.  Moreover, Ms. Wu made the statement in bad faith knowing that GJT's lawyers would file the declaration with the PTO and intending to induce the PTO to rely on it and to renew the '291 Registration.  The statement was material and the PTO, in fact, relied upon it statement by renewing the '291 Registration.  Had the PTO been informed of the true facts, i.e., that the Sailing Boat Brand mark was not in use in connection with rice flour, glutinous rice flour and/or instant noodles, the PTO would not have renewed the '291 Registration.

51.     The '291 Registration should be canceled pursuant to 15 U.S.C. §§ 1064 and 1119 on the grounds that the registration was obtained as a consequence of a fraud practiced upon the trademark office by GJT in that, at the time GJT renewed the '291 Registration on May 9, 2008, it caused its attorneys to falsely declare the Sailing Boat Brand Mark was in use in commerce in connection with all the goods listed in the '291 Registration.

52.     As a separate ground, the '291 Registration should be canceled as a consequence of a fraud practiced upon the PTO by GJT in that, at the time GJT renewed the '291 Registration on May 14, 2014, its president, Ms. Wu, falsely declared that the Sailing Boat Brand Mark was in use in commerce in connection with rice flour, glutinous rice flour and instant noodles.

53.      Golden Lyon has standing to seek cancellation of the '291 Registration because a counterclaimant's standing to cancel a pleaded registration is inherent. Further, in response to GJT's claim, Golden Lyon has voluntarily ceased sales and promotional efforts of certain of its products.  Finally, as a result of GJT's claims, and the fraudulently procured '291 Registration, Golden Lyon is damaged by having to expend considerable resources and time, attorneys' fees and costs defending against GJT's allegations in this Court.

**FIRST AMENDED COUNTERCLAIM**

**COUNT IV**

**(Against GJT for Cancellation of U.S. Registration No. 5,568,931 -**

**15 U.S.C. §§ 1064 and 1119)**

54.    Golden Lyon incorporates paragraphs 1 through 13, above, as though fully set forth in this paragraph.

55.    On or about September 25, 2018, the PTO issued U.S. Registration no. 5,568,931 (the "'931 Registration") to GJT for that certain "Five Major Brands Mark" for use in connection with "Rice chips; Rice crackers; Rice noodles; Rice sticks; Rice vermicelli; [and] Chinese rice noodles (bifun uncooked)" in IC 30.  The Five Major Brands Mark is shown below:



56.    According to the records of the PTO, which are publicly available, the application (the "'765 Application") that matured into the '931 Registration, was filed on or about January 9, 2018.  A true and correct copy of the '765 Application is attached as Exhibit G.  The '765 Application included a declaration that was electronically signed by GJT's counsel, Ms. Jie Tan.  The declaration stated, among other things, that the Five Major Brands Mark was in use in commerce in connection with all the goods listed in the '765 Application, that Ms. Tan had conducted an inquiry into the facts stated in the declaration, and that, based upon that inquiry, there was evidentiary support for the statement that the Five Major Brands Mark was in use in commerce in connection with all the goods for which GJT was seeking federal registration.

57.    Golden Lyon formerly had a business relationship with GJT that spanned many years.  As a consequence of that relationship, Golden Lyon is familiar with the products GJT has offered under the Five Major Brands Mark and it is aware that GJT

**FIRST AMENDED COUNTERCLAIM**

does not use, and it has never used, the Five Major Brands Mark in commerce in connection with, among other things, rice chips, rice crackers rice noodles or Chinese rice noodles (bifun, uncooked).  Thus, the statement in the declaration of Ms. Tan that the Five Major Brands Mark was in use in commerce in connection with all the goods listed in the '765 Application was false on its face at the time it was made.

58.     On information and belief, prior to time Ms. Tan electronically signed the declaration on January 9, 2018, she contacted GJT's president, Wu Hai Xing, to confirm that the Five Major Brands Mark was, in fact, in use in connection with all the goods listed in the '765 Application.  When contacted by Ms. Tan, Ms. Wu falsely told Ms. Tan that the mark was in use in connection with all the goods listed in the '765 Application.

59.     At the time Ms. Wu told Ms. Tan that the Five Major Brands Mark was in use in connection with all the goods for which application was being sought, Ms. Wu knew that the statement was false.  Moreover, Ms. Wu made the statement in bad faith knowing that Ms. Tan would repeat the statement to the PTO and intending to induce the PTO to rely on it in issuing a registration for the Five Major Brands Mark.  The statement was material and the PTO, in fact, relied upon the statement and issued the '931 Registration.  Had the PTO been informed of the true facts, i.e., that the Five Major Brands Mark was not in use in connection with all the goods for which GJT was seeking registration, the PTO would not have issued the '931 Registration.

60.     The '931 Registration should be canceled pursuant to 15 U.S.C. §§ 1064 and 1119 on the grounds that the registration was obtained as a consequence of a fraud practiced upon the trademark office by GJT in that, at the time GJT filed the '765 Application on January 9, 2018, it caused its attorneys to falsely declare the Five Major Brands Mark was in use in commerce in connection with all the goods listed in the '765 Application.

61.     Golden Lyon has standing to seek cancellation of the '931 Registration because a counterclaimant's standing to cancel a pleaded registration is inherent.

**FIRST AMENDED COUNTERCLAIM**

Further, in response to GJT's claim, Golden Lyon has voluntarily ceased sales and promotional efforts of certain of its products.  Finally, as a result of GJT's claims, and the fraudulently procured '931 Registration, Golden Lyon is damaged by having to expend considerable resources and time, attorneys' fees and costs defending against Plaintiff's allegations in this Court.

**COUNT V**

**(Against GJT and WMI for Declaratory Relief as to Chao Ching Packaging – 28 U.S.C. § 2201)**

62.    Golden Lyon incorporates paragraphs 1 through 13, above, as though fully set forth in this paragraph.

63.    An actual and present controversy exists between Golden Lyon, on the one hand, and GJT and WMI, on the other, with respect to GJT and WMI's alleged rights in and to the Chao Ching Packaging.

64.    GJT and WMI contend that the Chao Ching Packaging serves a source-identifying function because it is inherently distinctive or because it has acquired secondary meaning.  They further contend that Golden Lyon is selling product in similar packaging and they object to Golden Lyon's sales of such product on the grounds that consumers are likely to be confused as a consequence of the alleged similarities in the parties' respective packaging.

65.    Golden Lyon, on the other hand, contends that the combination of elements GJT and WMI contend constitute its protectable Chao Ching trade dress, when separated from the Sailing Boat Brand and the Five Major Brands Marks appearing on the packaging, do not create a commercial impression separate and apart from the other elements of the Chao Ching Packaging and that consumers, therefore, perceive those elements as mere decoration.  Therefore, that combination of elements cannot function as a trademark.

66.    Golden Lyon further contends that, as shown in Exhibit H, the design and

**FIRST AMENDED COUNTERCLAIM**

graphic elements of the Chao Ching Packaging, other than the Sailing Boat Brand and Five Major Brands Marks, that GJT and WMI allege make up its protectable trade dress – namely, (i) a package divided into top, middle and bottom portions, with the middle portion being clear, (ii) the colors red, yellow and orange, (iii) trophies, and (iv) repeating logos – are common elements that have been used for years by numerous third parties in connection with rice stick packaging.  Given the ubiquitous presence in the marketplace of packaging making use of these design elements, Golden Lyon further contends that the combination of elements in GJT and WMI's Chao Ching Packaging is not inherently distinctive and that it is not capable of acquiring secondary meaning.

67.    As a consequence of the foregoing, Golden Lyon contends that GJI and WMI have no protectable trade dress rights in the Chao Ching Packaging and Golden Lyon therefore requests that the court resolve the competing contentions of the parties.

## COUNT VI

### (Against SRT and WMI for Declaratory Relief as to Kong Moon Packaging – 28 U.S.C. § 2201)

68.    Golden Lyon incorporates paragraphs 1 through 13, above, as though fully set forth in this paragraph.

69.    An actual and present controversy exists between Golden Lyon, on the one hand, and SRT and WMI, on the other, with respect to SRT and WMI's alleged rights in and to the Kong Moon Packaging.

70.    SRT and WMI contend that the Kong Moon Packaging serves a source-identifying function because it is inherently distinctive or because it has acquired secondary meaning.  They further contend that Golden Lyon is selling product in similar packaging and they object to Golden Lyon's sales of such product on the grounds that consumers are likely to be confused as a consequence of the alleged similarities in the parties' respective packaging.

71.    Golden Lyon, on the other hand, contends that the combination of elements

SRT and WMI contend constitute its protectable Kong Moon trade dress, when separated from the Double Swallow Brand and the Five Major Brands Marks appearing on the packaging, do not create a commercial impression separate and apart from the other elements of the Kong Moon Packaging and that consumers, therefore, perceive those elements as mere decoration.  Therefore, that combination of elements cannot function as a trademark.

72.    Golden Lyon further contends that, as shown in Exhibit I, the design and graphic elements of the Kong Moon Packaging, other than the Double Swallow Brand and Five Major Brands Marks, that SRT and WMI allege make up its protectable trade dress – namely, (i) a package divided into top, middle and bottom portions, with the middle portion being clear, (ii) the colors red, yellow and orange, (iii) trophies, and (iv) repeating logos – are common elements that have been used for years by numerous third parties in connection with rice stick packaging.  Given the ubiquitous presence in the marketplace of packaging making use of these design elements, Golden Lyon further contends that the combination of elements in SRT and WMI's Kong Moon Packaging is not inherently distinctive and that it is not capable of acquiring secondary meaning.

73.    As a consequence of the foregoing, Golden Lyon contends that SRT and WMI have no protectable trade dress rights in the Kong Moon Packaging and Golden Lyon therefore requests that the court resolve the competing contentions of the parties.

## PRAYER FOR RELIEF

Wherefore, Golden Lyon requests that the Court:

1.    Enter final judgment canceling the '897, '672, '291 and '931 Registrations and directing the Director of the PTO to remove such registrations from the Principal Register;

2.    Declare that GJT and WMI have no valid trade dress rights in the Chao Ching Packaging because it is incapable of serving a source-identifying function, is not inherently distinctive or has not acquired secondary meaning;

**FIRST AMENDED COUNTERCLAIM**

3.     Declare that SRT and WMI have no valid trade dress rights in the Kong Moon Packaging because it is incapable of serving a source-identifying function, is not inherently distinctive or has not acquired secondary meaning;

4.     Award Golden Lyon its costs incurred in the action; and

5.     Grant such other relief as the Court deems just and proper.

Dated: August 24, 2020          LEECH TISHMAN FUSCALDO & LAMPL

By:/s/Douglas H. Morseburg
      Douglas H. Morseburg
      Esther J. Choe

Attorneys for Defendant and Counterclaimant Golden Lyon Investment Co., dba W.Y. International Inc.

---

-21-

**FIRST AMENDED COUNTERCLAIM**

1

## <u>REQUEST FOR JURY TRIAL</u>

2

3        Golden Lyon requests a trial by jury of all issues so triable.

4

5    Dated:  August 24, 2020                    LEECH TISHMAN FUSCALDO & LAMPL

6                                                By:/s/Douglas H. Morseburg

7                                                     Douglas H. Morseburg
                                                     Esther J. Choe
8

9                                                Attorneys for Defendant and Counterclaimant
                                                 Golden Lyon Investment Co., dba W.Y.
10                                               International Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-22-

**FIRST AMENDED COUNTERCLAIM**